UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PHILLIP CARROLL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:19-cv-000224-JMS-TAB |
| BMW OF NORTH AMERICA, LLC, and BAVARIAN MOTOR WORKS, | ) ) ) ) |
| Defendants. | ) ) |

**ORDER**

Plaintiff Phillip Carroll purchased a BMW 7 Series (the "Vehicle") in 2010. On January 22, 2019, he filed suit against Defendants BMW of North America, LLC ("BMW") and Bavarian Motor Works, seeking damages related to the Vehicle's excessive consumption of engine oil and Defendants' failure to honor the terms of their warranty, in violation of the Magnuson-Moss Warranty Act ("MMWA") and various Indiana statutes. The Court previously denied BMW's Motion to Dismiss the suit for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), [Filing No. 12], and BMW has now filed a Motion for Leave to Appeal that denial, [Filing No. 34]. BMW has also filed two additional Motions to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), based on the statute of limitations. [Filing No. 27; Filing No. 35.] These motions are now ripe for the Court's review.

**I.**
**MOTION FOR LEAVE TO APPEAL**

A. Standard of Review

A party may petition for leave to file an interlocutory appeal of a nonfinal order under 28 U.S.C. § 1292(b). *See Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000).

There are four statutory criteria for granting a § 1292(b) petition: (1) the proposed appeal must involve a question of law; (2) it must be controlling; (3) it must be contestable; and (4) its resolution must speed up the litigation. *Id.* In addition, the petition must be filed within a reasonable time after the entry of the order to be appealed. *Id.* (citation omitted). The Court may only certify an order for immediate appeal if all of these criteria are satisfied. *Id.* at 676.

**B. Background**

Mr. Carroll's initial Complaint alleged that he purchased the Vehicle from Defendants' authorized dealer (the "Dealer") in April 2010 for $107,808.40. [Filing No. 1 at 3.] The general nature of Mr. Carroll's claims was that the Vehicle's engine had a defect that caused it to burn an excessive amount of engine oil and Defendants were aware of this defect, failed to disclose it, and failed to repair it as required by the warranty. [Filing No. 1 at 1-15].

In March 2019, BMW filed its Rule 12(b)(1) Motion to Dismiss, arguing that the Court lacked subject-matter jurisdiction because Mr. Carroll could not satisfy the $50,000 amount-in-controversy requirement under the MMWA. [Filing No. 12.] Relying on *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402 (7th Cir. 2004), BMW argued that the formula used to determine the amount in controversy is "the price of the replacement vehicle [or the purchase price], minus both present value of the allegedly defective car, and the value that the buyer received from use of the car." [Filing No. 13 at 2.] According to BMW, the value that Mr. Carroll received from his use of the Vehicle is $86,478.40, which corresponds to the overall depreciation in the Vehicle's value as determined by subtracting the car's current Kelley Blue Book value ($21,330) from the original purchase price ($107,808.40). [Filing No. 13 at 4-5.] Therefore, BMW argued, Mr. Carroll could not recover any damages, because the purchase price of $107,808.40, minus the present value of $21,330, minus the depreciation of $86,478.40, equals $0. [Filing No. 13 at 4-5.] Alternatively,

BMW proposed that the Court could determine the damages by subtracting the amount of depreciation ($86,478.40) from the original purchase price ($107,808.40), yielding $21,330. [Filing No. 13 at 5.] BMW also argued that, because punitive damages are not recoverable in breach of warranty actions under Indiana law, such damages could not be included in the amount-in-controversy determination. [Filing No. 18 at 1-4].

The Court denied BMW's motion on May 9, 2019, concluding that it could not determine, to a legal certainty, that Mr. Carroll's claim was worth less than $50,000. [Filing No. 23.] First, the Court noted that *Schimmer* said nothing about how to calculate the value that a buyer received for the use of his vehicle, and BMW had merely come up with its own calculation based on the Kelley Blue Book value. [Filing No. 23 at 9-10.] The Court then concluded that, because BMW had identified no Indiana caselaw demonstrating that punitive damages were not available in breach of warranty actions, it could not be said to a legal certainty that such damages were not recoverable. [Filing No. 23 at 10-11.]

**C. Discussion**

On July 9, 2019, BMW filed a Motion for Leave to Appeal the Court's denial of its Rule 12(b)(1) Motion to Dismiss, pursuant to § 1292(b). [Filing No. 34.] In the motion, it identifies the following two restated questions that should be certified for appeal:

(1) How is the value a plaintiff received from the use of his vehicle calculated, and can Kelley Blue Book data be used to determine that value for purposes of jurisdiction under the MMWA?

(2) Does *Miller Brewing Co. v. Best Beers of Bloomington, Inc*. 608 N.E.2d 975, 981 (Ind. 1993), stand for the proposition that punitive damages are not available in breach of warranty actions under Indiana law, and, if not, was the Court required to use its "own best judgment" to estimate how the Indiana Supreme Court would rule on that issue?

[Filing No. 34 at 2.] BMW asserts that the Motion was filed within a reasonable time of the Court's order, given that no substantive discovery has been completed and the case is still at the motion to dismiss stage. [Filing No. 34 at 3.]

BMW argues that the Court erred in applying the *Schimmer* damages formula by ignoring the "offset for usage" factor and should seek clarification from the Seventh Circuit concerning how that factor should be applied. [Filing No. 34 at 3-4.] In addition, BMW asserts that *Miller Brewing*—in which the Indiana Supreme Court held that punitive damages are not allowed in a breach of contract case—dictates that punitive damages are also not available in a breach of warranty action. [Filing No. 34 at 7]. If *Miller Brewing* does not apply, it argues, this Court should have used its own judgment to predict how the Indiana Supreme Court would rule on the issue. [Filing No. 34 at 7-8.] In the alternative, BMW asks the Court to certify the question to the Indiana Supreme Court. [Filing No. 34 at 10-11.]

Mr. Carroll responds that the Motion was not timely, as BMW has not provided any reason for its two-month delay. [Filing No. 41 at 4-5.] He argues that the issues of how to properly apply the *Schimmer* test, and whether the Kelley Blue Book value can be used to estimate the value that he received from his use of the Vehicle, are not pure questions of law, but are questions of fact. [Filing No. 41 at 6-9.] He further argues that these questions, and the question of whether Indiana law permits punitive damages in breach of warranty actions, are not contestable, and certification would not speed up the litigation. [Filing No. 41 at 9-13.] Finally, Mr. Carroll argues that this Court should not certify a question regarding punitive damages to the Indiana Supreme Court because: (1) the issue will not be dispositive; (2) it is not a "truly novel and unsettled question of state law;" and (3) certification is discretionary. [Filing No. 41 at 13-14.]

BMW replies that it seeks review on a pure question of law: "How is 'offset for use' calculated?" [Filing No. 45 at 2.] Further, it argues that the question is controlling because it will determine whether there is jurisdiction in the case. [Filing No. 45 at 3.] BMW also asserts that its motion was timely because: (1) there is no deadline for the filing of this type of motion; (2) there was no undue delay, as the parties have not conducted discovery beyond initial disclosures; and (3) the cases cited by Mr. Carroll regarding timeliness are distinguishable. [Filing No. 45 at 7-8.]

As used in § 1292(b), "question of law" references "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz*, 219 F.3d at 676. There must be a "pure" or "abstract" legal issue, or "something the court of appeals could decide quickly and cleanly without having to study the record." *Id.* at 676-77. Where a legal issue is unsettled, it may be appropriate to use § 1292(b) to obtain "a clarifying decision that might head off protracted litigation." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010) (granting a petition for interlocutory appeal to determine how the federal pleading standards for antitrust violations were impacted by recent Supreme Court decisions).

Here, BMW has not demonstrated that an interlocutory appeal under § 1292(b) is appropriate. As a preliminary matter, the Motion was not filed within a reasonable time, because BMW has offered no explanation for why it waited two months after the Court's order to seek leave to appeal. The Court could deny the Motion on this basis alone. *See Ahrenholz*, 219 F.3d at 675-76; *Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000) (stating that "a district judge should not grant an inexcusably dilatory request").

More importantly, BMW has not identified a controlling question of law, the resolution of which is likely to speed up the litigation. Even if it were true that, as a matter of law, a vehicle's Kelley Blue Book value could be considered in determining the value the owner received from his

use of that vehicle, that would not end the Court's inquiry. Although the Kelley Blue Book figure represents one measure of a vehicle's value, it is not the only measure, and, in this case, may not account for Mr. Carroll's alleged expenditures related to his need to add additional oil to the engine, which is a central issue in this litigation. The questions posed by BMW's Motion to Dismiss—what value Mr. Carroll actually received from the use of the Vehicle, and whether that value reduced the total recoverable damages below the $50,000 threshold—are issues of fact. A legal determination that the Kelley Blue Book value could be considered in resolving those issues would not establish that the Court lacks jurisdiction over this case.

Given that the value question is unsettled, a determination as to whether punitive damages are available in breach of warranty actions under Indiana law would not resolve the jurisdictional dispute. Therefore, that question is similarly inappropriate for interlocutory review or certification to the Indiana Supreme Court. *See, e.g.*, *Craig v. FedEx Ground Package Sys., Inc.*, 686 F.3d 423, 429 (7th Cir. 2012) (explaining that one factor to consider in deciding whether to certify a question to a state supreme court is whether the resolution of the question will be outcome-determinative). Accordingly, BMW's Motion for Leave to Appeal is denied.

## II.
### MOTIONS TO DISMISS

### A. Standard of Review

A party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain allegations that collectively "state a claim to relief that is plausible on its face." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019) (internal quotations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

A plaintiff is not required to plead facts that overcome affirmative defenses based on the statute of limitations. *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018). Accordingly, dismissing a complaint as untimely based on the pleadings is disfavored, as a statute-of-limitations defense generally turns on facts not before the Court at this stage. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (citations omitted). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Id.* Nevertheless, if the complaint itself contains all of the elements of a statute of limitations defense, dismissal under Rule 12(b)(6) is proper. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).

### B. Background

On June 6, 2019, BMW filed a Motion to Dismiss the complaint under Rule 12(b)(6), asserting that Mr. Carroll's claims were barred by the statute of limitations. [Filing No. 27.] At the outset, the Court concludes that, because an Amended Complaint was filed on June 19, 2019, [Filing No. 29], the June 6 Motion to Dismiss is moot, and is **DENIED** on that basis. The Court focuses only on BMW's second Motion to Dismiss, filed on July 10, 2019. [Filing No. 35.]

The Amended Complaint contained the following allegations, which the Court must accept as true. Mr. Carroll purchased the Vehicle on April 15, 2010, for $107,808.40. [Filing No. 29 at 3.] In deciding whether to purchase the Vehicle, he relied on the manufacturer's new vehicle warranty, under which Defendants promised to repair or replace any components found to be

defective during the four-year or 50,000-mile warranty period. [Filing No. 29 at 4-5.] Defendants also made representations as to the Vehicle's performance and quality and assured Mr. Carroll that it was free from defects. [Filing No. 29 at 4.]

At the time of purchase, the recommended oil service interval was the earlier of two years or 15,000 miles. [Filing No. 29 at 11.] However, "[w]ithin a couple of years after" purchasing the Vehicle, Mr. Carroll noticed that it consumed an excessive amount of oil, which required him to add oil before the recommended interval. [Filing No. 29 at 3.] On one occasion within the warranty period, the add oil light was illuminated on the Vehicle's dash and, because the Vehicle was not due for an oil change, Mr. Carroll spoke to a Service Manager of the Dealer, who stated that it was normal for the Vehicle's high-performance engine to burn oil. [Filing No. 29 at 3.] The Dealer did not offer any repairs but did change the oil at Mr. Carroll's request. [Filing No. 29 at 3.] Thereafter, Mr. Carroll had to take the Vehicle to the Dealer for an oil change every 3,000 miles or whenever the add oil light was illuminated, whichever occurred first. [Filing No. 29 at 4.] At no time did the Dealer disclose to Mr. Carroll that the Vehicle's excessive oil consumption was the result of a defect covered under the manufacturer's warranty. [Filing No. 29 at 4.]

Pursuant to the warranty, Defendants' authorized dealers expressly assented to perform the necessary repairs, in exchange for monetary compensation. [Filing No. 29 at 5.] However, Defendants controlled the warranty repairs, as they provide training, materials, special tools, diagnostic software, and replacement parts, and demand that the repairs be performed in accordance with specific guidelines. [Filing No. 29 at 5.] Therefore, authorized dealers are agents of Defendants for purposes of vehicle repairs. [Filing No. 29 at 5.]

After the warranty expired, the Vehicle's excessive oil consumption got progressively worse, to the point where Mr. Carroll is now adding one quart of oil every 250 miles. [Filing No.

29 at 4.] Mr. Carroll complained to an authorized dealer about the oil consumption in September 2018, and the dealer performed an analysis and oil change. [Filing No. 29 at 4.] Thereafter, Mr. Carroll drove the Vehicle for about 800 miles, before it began emitting smoke from the exhaust and the add oil light illuminated. [Filing No. 29 at 4.]

At some point after purchasing the Vehicle, Mr. Carroll learned that the engine contained a manufacturing defect that caused it to consume engine oil at an extremely rapid rate. [Filing No. 29 at 5.] The Vehicle is equipped with a V8, twin-turbocharged engine, known as the N63 engine, and such engines have become widely known for their consumption of excessive amounts of engine oil, which many in the automotive industry and "the BMW enthusiast community" characterize as a defect. [Filing No. 29 at 6-7.] The excessive oil consumption by the N63 engine was not disclosed by BMW in any of its product literature or at the time of purchase. [Filing No. 29 at 7-8.] However, many customers became upset about the oil consumption issue and posted their complaints online, as early as September 2011. [Filing No. 29 at 7-8.] Furthermore, the defect presents a safety issue, because if there is insufficient oil to properly lubricate the engine, the engine could fail, which could potentially cause a crash. [Filing No. 29 at 13-15.]

Defendants have issued several technical service bulletins to their dealers concerning oil consumption by vehicles with N63 engines. [Filing No. 29 at 8.] In June 2013, BMW issued a bulletin that changed the oil consumption specifications for these vehicles and instructed service technicians to add two quarts of oil, even when the vehicles' electronic system specifically called for one quart. [Filing No. 29 at 9.] The bulletin further instructed service technicians as follows:

> Engines equipped with a turbocharger(s) will consume more engine oil than normally aspirated engines (non-turbocharged). The additional oil that is consumed in a turbocharged engine is mainly due to the turbocharger lubrication requirements. . . . The additional engine oil consumption of a turbocharged engine, as compared to a normally aspirated engine, is normal and not a defect.

[Filing No. 29 at 10.] According to Mr. Carroll, this and other bulletins were part of a campaign to conceal the oil consumption defect by representing that it is normal for engines equipped with turbochargers to consume excessive amounts of oil. [Filing No. 29 at 9-11.]

On December 29, 2014, Defendants released a bulletin entitled "N63 Customer Care Package," which instructed service representatives to check the timing chain, fuel injectors, mass air flow sensors, crankcase vent lines, battery, engine vacuum pump, and low pressure fuel sensor, and, if necessary, replace such parts on vehicles containing the N63 engine for free, even if no longer covered by the manufacturer's warranty. [Filing No. 29 at 11-12.] Defendants also launched the "N63 Customer Loyalty Offer," which offered purchasers discounts on new BMW vehicles to replace their N63 vehicles. [Filing No. 29 at 12.] Finally, Defendants launched an "N63 Customer Appreciation Program," which permitted dealerships to provide purchasers with up to $50 worth of BMW merchandise or accessories. [Filing No. 29 at 12.]

Defendants learned of the oil consumption defect in or before 2008, via pre-release testing data, durability testing, early consumer complaints about the oil consumption defect, testing conducted in response to complaints, aggregate data from BMW dealers, and from other internal sources. [Filing No. 29 at 13.] By contrast, Mr. Carroll did not and could not have known that there was an oil consumption defect with the Vehicle's engine at the time that he purchased the Vehicle or any time thereafter. [Filing No. 29 at 15.]

Mr. Carroll filed his Amended Complaint on June 19, 2019, setting forth the following causes of action: (1) a violation of the MMWA when Defendants failed to remedy the Vehicle's oil consumption defect, in violation of the written and implied warranties, [Filing No. 29 at 18]; (2) a violation of the MMWA and Indiana Code § 26-1-2-314 when Defendants sold Mr. Carroll the Vehicle when it was not in merchantable condition, thereby breaching the implied warranty of

merchantability, [Filing No. 29 at 18-19]; (3) a violation of Indiana Code § 26-1-2-313 when Defendants refused to repair the oil consumption defect after Mr. Carroll submitted the Vehicle for repairs, in violation of the express written warranty, [Filing No. 29 at 19-20]; and (4) a violation of the Indiana Deceptive Consumer Sales Act ("IDCSA") when Defendants learned of the oil consumption defect in 2008 or earlier, but concealed and failed to disclose it at the time of purchase and on every occasion on which Mr. Carroll presented the Vehicle to dealerships for repairs, [Filing No. 29 at 21-23].

In the Amended Complaint, Mr. Carroll identifies four bases upon which to toll the statute of limitations: fraudulent concealment, the discovery rule, estoppel, and class action tolling. [Filing No. 29 at 15-17.] As to fraudulent concealment, Mr. Carroll alleges that Defendants knew of the Vehicle's oil consumption defect, had a duty to disclose it and warn him of the danger it might cause, and knowingly, affirmatively, and actively concealed it from him, while the Dealer represented that the Vehicle was not defective at all. [Filing No. 29 at 15-16.] As to the discovery rule, Mr. Carroll asserts that he could not have discovered, through the exercise of reasonable diligence, that the Vehicle was defective, or that Defendants' actions through the bulletins or customer care campaigns did not cure the defect. [Filing No. 29 at 16-17.] In addition, Mr. Carroll asserts that, because Defendants knowingly concealed the true nature and quality of the Vehicle and never intended to repair the defect, they are estopped from relying on a statute of limitations defense. [Filing No. 29 at 17.] Finally, Mr. Carroll alleges that the statute of limitations was tolled by the complaint filed in the class action suit *Bang v. BMW of North America, LLC*, Case No. 2:15-cv-6954 (D.N.J. Sept. 18, 2015), in which he was a member of the class, but opted out of the settlement. [Filing No. 29 at 17.]

### C. Discussion

BMW has now filed a second Rule 12(b)(6) Motion to Dismiss, again asserting that Mr. Carroll's claims are barred by the statute of limitations. [[Filing No. 35](#).] BMW argues that the limitations period cannot be tolled because: (1) Mr. Carroll has not alleged facts showing a fiduciary or confidential relationship, as is necessary to show fraudulent concealment by failure to speak; (2) any statement by the Dealer that the Vehicle's oil consumption was normal does not amount to fraudulent concealment and cannot be attributed to Defendants; (3) Mr. Carroll has not alleged facts showing that he was diligent; (4) no discovery rule applies; and (5) class action tolling does not apply because the class action was not filed until after the limitations period had already run and, in any event, Mr. Carroll opted out of the class. [[Filing No. 36 at 4-9](#).] BMW also asserts that Mr. Carroll did not allege that he provided timely written notice and an opportunity to cure the alleged deceptive practices, as required by the IDCSA. [[Filing No. 36 at 4](#).]

Mr. Carroll responds that he was not required to negate a statute of limitations defense in his Amended Complaint, and his claims did not accrue at the time of purchase, but rather when Defendants represented that the Vehicle was not defective and failed to repair it. [[Filing No. 44 at 5-7](#).] He further argues that he pled sufficient facts to put BMW on notice of his fraudulent concealment claim, class action tolling applies to plaintiffs who opt out of the class, and he pled facts showing he provided proper written notice under the IDSCA. [[Filing No. 44 at 7-16](#).]

In reply, BMW maintains that there is no discovery rule for Mr. Carroll's claims, which all accrued when he purchased the Vehicle. [[Filing No. 46 at 2-5](#).] It also argues that the statute of limitations was not tolled under the fraudulent concealment doctrine because Mr. Carroll did not allege facts showing that: (1) a fiduciary or confidential relationship existed; (2) the Dealer's statement could be attributed to Defendants; (3) the Dealer's statement amounted to active

concealment; and (4) Mr. Carroll acted with diligence. [Filing No. 46 at 5-8.] Finally, BMW maintains that class action tolling does not apply. [Filing No. 46 at 8-10.]

Where a federal statute does not expressly contain a statute of limitations, the Court generally will "borrow" a limitations period from an analogous state cause of action. *North Star Steel Co. v. Thomas*, 515 U.S. 29, 33-35 (1995). Because the MMWA does not contain its own statute of limitations, the Court will apply the Indiana breach of warranty statute of limitations to Mr. Carroll's breach of warranty claims under the MMWA. *See id.*; *see also Highway Sales, Inc. v. Blue Bird Corp.*, 559 F.3d 782, 789 n.6 (8th Cir. 2009) (concluding that, because the MMWA did not contain its own statute of limitations, the statute of limitations period for the plaintiffs' state law breach of warranty claims applied). The Court will also apply the Indiana rules concerning tolling. *See e.g., Indep. Tr. Corp.*, 665 F.3d at 935 (explaining that, when the Court applies state law regarding the statute of limitations, it also applies the state law regarding "any rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel").

Under Indiana law, the statute of limitations for a breach of warranty action is four years. Ind. Code § 26-1-2-725(1). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Ind. Code § 26-1-2-725(2). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered." Ind. Code § 26-1-2-725(2). An action under the IDCSA must be brought within two years after the deceptive act. Ind. Code § 24-5-0.5-5(b). "Because the [IDCSA] has an occurrence statute of limitation, rather than a discovery statute of limitation, the statutory period commences to run at

the occurrence of the deceptive act." *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 964-65 (Ind. Ct. App. 2000).

The statute of limitations may be tolled if the defendant fraudulently conceals the action giving rise to liability. *Ludwig v. Ford Motor Co.*, 510 N.E.2d 691, 697 (Ind. Ct. App. 1987); Ind. Code § 34-11-5-1 ("If a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action."). However, the doctrine of fraudulent concealment is "narrowly defined," as the concealment must be "active and intentional," and there must be some trick or contrivance intended by the defrauder. *Ludwig*, 510 N.E.2d at 697. (citations omitted). Mere silence will not constitute concealment, absent a duty to speak arising from a fiduciary or confidential relationship. *Id.* (citations omitted). Finally, the plaintiff must show that he used due diligence to detect the fraud. *Id.* (citation omitted).

In addition, the doctrine of equitable estoppel "will apply to prevent a party from asserting a statute of limitations defense when such party by fraud or other misconduct has prevented a party from commencing his action or induced him to delay the bringing of his action beyond the time allowed by law." *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 56 N.E.3d 38, 44 (Ind. Ct. App. 2016) (internal quotations and citation omitted). The party asserting equitable estoppel must show that he: (1) lacked knowledge and the means to discover the facts in question; (2) relied upon the conduct of the party estopped; and (3) as a result, changed his position prejudicially. *Id.* (citing *Schoettmer v. Wright*, 992 N.E.2d 702, 709 (Ind. 2013)).

Finally, the filing of a proposed class action immediately pauses the running of the statute of limitations for all class members. *Collins v. Vill. of Palatine, Ill.*, 875 F.3d 839, 843 (7th Cir. 2017), *cert. denied* 138 S. Ct. 2014 (2018) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538

(1974) and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)). When a class member opts out of a certified class, the clock immediately resumes running on his claim. *Id.*

Here, the Amended Complaint does not contain sufficient information for the Court to determine whether Mr. Carroll's claims are barred by the statute of limitations. Although he alleges that he purchased the Vehicle on April 15, 2010, and did not file this action until January 22, 2019, he has alleged that several tolling principles apply. However, Mr. Carroll did not—and was not required to—make specific factual allegations concerning the timing of the events and representations that he alleges toll the statute of limitations. Accordingly, the Court cannot determine at this stage whether the limitations period was indeed tolled and cannot say for certain that there is no set of facts consistent with the Amended Complaint that would support a finding that it was. *See In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1112 (S.D. Ind. 2001) ("Whether or not the facts contained in the Master Complaint would, by themselves, support a finding of fraudulent concealment is irrelevant; the relevant question is whether there is any set of facts consistent with the Master Complaint that will support such a finding if Plaintiffs ultimately can prove them."), *rev'd in part on other grounds*, 288 F.3d 1012 (7th Cir. 2002). In light of this uncertainty, and the standard disfavoring dismissal at the pleading stage based on the statute of limitations, the Court denies BMW's Motion to Dismiss.

### III.
#### CONCLUSION

Based on the foregoing, the Court **DENIES** BMW's Motion for Leave to Appeal, [34], **DENIES AS MOOT** BMW's first Rule 12(b)(6) Motion to Dismiss, [27], and **DENIES** BMW's second Rule 12(b)(6) Motion to Dismiss, [35].

The statute of limitations issue is better dealt with by way of a motion for summary judgment, once an evidentiary record has been developed. To that end, the parties shall have 90

days from the date of this Order to conduct discovery into the statute of limitations issue. After the close of the 90-day period, Defendants shall have an additional 30 days to file a motion for summary judgment on the statute of limitations issue, if they determine that such motion is warranted. Although not provided for in the Case Management Plan, [Filing No. 24], the Court will permit a second motion for summary judgment, concerning the merits, to be filed later if necessary.

Date: 9/6/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**