UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PHILLIP CARROLL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:19-cv-000224-JMS-TAB |
| | ) |
| BMW OF NORTH AMERICA, LLC and | ) |
| BAVARIAN MOTOR WORKS, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff Phillip Carroll brought this lawsuit against Defendants BMW of North America, LLC ("BMW") and Bavarian Motor Works, alleging that Defendants breached the warranty relating to a vehicle he had purchased, in violation of the Magnuson-Moss Warranty Act ("MMWA") and Indiana law. The Court granted summary judgment in favor of BMW, concluding that Mr. Carroll's claims were barred by the applicable statutes of limitations. [Filing No. 151.] Mr. Carroll then voluntarily dismissed his claims against Bavarian Motor Works, [Filing No. 152; Filing No. 154], and the Court entered final judgment, [Filing No. 155]. Mr. Carroll has now filed a Motion for Reconsideration, pursuant to Federal Rule of Civil Procedure 59(e), asking the Court to reconsider the final judgment granted in favor of BMW. [Filing No. 156.] That motion is fully briefed and ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

"A motion under Rule 59(e) may be granted only if there has been a manifest error of fact or law, or if there is newly discovered evidence that was not previously available." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). "A manifest error is not demonstrated by the

1

disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotations and citation omitted). Furthermore, "Rule 59(e) 'does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment,'" *Barrington Music Prod., Inc. v. Music & Arts Ctr.*, 924 F.3d 966, 968 (7th Cir. 2019) (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013)), and "a Rule 59(e) motion is not to be used to 'rehash' previously rejected arguments." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014). Relief under Rule 59(e) is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

## II.
### BACKGROUND

In April 2010, Mr. Carroll purchased a BMW vehicle ("the Vehicle"), which was equipped with a high-performance N63 engine, from Bill DeFouw BMW ("DeFouw"), an authorized BMW dealer. [Filing No. 29 at 3; Filing No. 89 at 7; Filing No. 102-1 at 9-10.] On January 22, 2019, Mr. Carroll filed the initial Complaint in this action. [Filing No. 1.] He later filed an Amended Complaint, alleging claims under the MMWA and Indiana law for breach of warranties and deceptive sales practices. [Filing No. 29.] Generally, Mr. Carroll alleged that the Vehicle was defective due to a problem with the valve stem seals, that this defect caused the engine to consume an excessive amount of oil, and that BMW knew of this defect with N63 engines and concealed it from Mr. Carroll and other buyers. [Filing No. 29.]

BMW moved to dismiss the Amended Complaint, arguing that Mr. Carroll's claims were barred by the applicable statutes of limitations. [Filing No. 35.] The Court denied BMW's

motion, reasoning that further factual development was required before the Court could decide the statute of limitations issues. [Filing No. 48.] After discovery on the statute of limitations issues was conducted, BMW moved for summary judgment, and Mr. Carroll cross-moved for summary judgment. [Filing No. 101; Filing No. 112.] In an Order issued August 6, 2021 ("the Summary Judgment Order"), the Court granted BMW's Motion for Summary Judgment and denied Mr. Carroll's Cross-Motion for Summary Judgment. [Filing No. 151.]

Relevant to the instant Motion for Reconsideration, and viewing the evidence in the light most favorable to Mr. Carroll as required by the summary judgment standard, the Court recounted the following facts in the Summary Judgment Order. Mr. Carroll called DeFouw "in the winter or spring of 2012" to advise that a light had illuminated in the Vehicle indicating the need to add a quart of oil. [Filing No. 151 at 5.] During that call, Mr. Carroll spoke to an unidentified Service Manager, who stated that it was "normal" for a high-performance engine to burn a quart of oil. [Filing No. 151 at 5.] Accordingly, Mr. Carroll did not take the Vehicle in for service, but instead purchased a quart of oil and added it to the Vehicle himself. [Filing No. 151 at 6.] Mr. Carroll repeated this process "about once a year," but never mentioned it during his maintenance or repair appointments and did not tell any BMW dealer or service provider about any oil consumption concerns until July 2018. [Filing No. 151 at 6-8.] The Court also outlined BMW's various internal reports and documents concerning oil consumption in N63 engines. [*See* Filing No. 151 at 9-16.]

In the Summary Judgment Order, the Court determined that Mr. Carroll's warranty claims are subject to a four-year statute of limitations, and his deceptive sales claims are subject to a two-year statute of limitations, both of which began to run on April 15, 2010 upon delivery of the Vehicle. [Filing No. 151 at 34-38.] The Court further determined that the fraudulent

3

concealment doctrine did not apply to toll the statutes of limitations because: (1) "[t]here is no evidence to suggest[] . . . that BMW—or the unidentified Service Manager more specifically—knew in 2011 or 2012 that defective valve stem seals were a potential cause of oil consumption"; (2) nothing in BMW's internal documents—which referenced valve stem seal issues as one of several potential causes of excessive oil consumption—demonstrated active concealment of Mr. Carroll's claims; and (3) Mr. Carroll did not demonstrate that he exercised due diligence, as the undisputed evidence shows that he did not present the Vehicle to a dealership within the warranty period for service, inspection, or repair related to oil consumption, he never mentioned oil issues during his service appointments, and he never sought any additional information about whether the Vehicle's oil consumption might or might not be "normal." [Filing No. 151 at 39-41.] For the same reasons, the Court concluded that equitable tolling did not apply. [Filing No. 151 at 41.] Accordingly, the Court determined that all of Mr. Carroll's claims were untimely. [Filing No. 151 at 41-42.]

Also in the Summary Judgment Order, the Court granted in part and denied in part BMW's Motion to Exclude the Opinions and Testimony of Plaintiff's Expert, Darren Manzari, [Filing No. 125]. [Filing No. 151 at 42.] Specifically, the Court excluded Mr. Manzari's opinion that BMW fraudulently concealed from customers the knowledge of defective valve stem seals in N63 engines, reasoning that his expertise in the area of automobile mechanics did not permit him to offer an opinion concerning whether the statement made by the unidentified Service Manager at DeFouw or BMW's internal documents amounted to fraudulent concealment. [Filing No. 151 at 30-31].

### III.
### DISCUSSION

Mr. Carroll asserts that the Court should reconsider its entry of judgment in favor of BMW for three reasons: (1) newly discovered evidence shows that BMW became aware in 2012 that defective valve stem seals were a potential cause of excessive oil consumption; (2) the Court erred in finding that Mr. Carroll did not exercise due diligence and that the fraudulent concealment doctrine did not apply; and (3) the Court erred in concluding that Mr. Manzari was not permitted to provide an expert opinion on the issue of whether BMW engaged in fraudulent concealment. [Filing No. 156 at 3-9.] In addition, after briefing on the Motion for Reconsideration was completed, Mr. Carroll filed a Notice of Supplemental Authority, in which he directs the Court's attention to a decision rendered in *Hurley v. BMW of North America, LLC*, 2021 WL 5822991 (E.D. Pa. Dec. 8, 2021). [Filing No. 165; Filing No. 165-1.] The Court will address each issue in turn.

#### A. Newly Discovered Evidence

In support of his motion, Mr. Carroll asserts that on August 5, 2021—the day before the Court issued the Summary Judgment Order—"BMW admitted that it specifically knew that defective valve stem seals were causing the oil consumption as early as 2012." [Filing No. 156 at 3.] He contends that Richard Veren, a BMW Technical Support Engineer who was designated as an expert by BMW in *Bryant v. BMW of North America, LLC*, No. 2:19-cv-00050-BHL (E.D. Wisc.), testified under oath that BMW knew as early as 2012 that valve stem seals in N63 engines were defective. [Filing No. 156 at 3-4.] Mr. Carroll further asserts that another BMW employee, Arturn Bolat, also testified that BMW knew about the stem seal issue in 2012, pointing to Mr. Bolat's deposition testimony in *Hurley*. [Filing No. 156 at 4.] Mr. Carroll argues that this evidence could not have been discovered sooner because transcripts of Mr. Veren's and

5

Mr. Bolat's testimony did not exist until after the Court issued its Summary Judgment Order. [Filing No. 156 at 5 n.4.] He also argues that the new evidence establishes that when he first complained to the DeFouw Service manager in 2012 about his vehicle's oil consumption, "BMW *did* know that defective valve stem seals were a potential cause of [Mr. Carroll's] vehicle's excessive oil consumption." [Filing No. 156 at 5 (emphasis original).] According to Mr. Carroll, "[a]t a bare minimum," Mr. Veren's testimony creates an issue of fact concerning: (1) when BMW and its dealers first learned that defective valve stem seals potentially caused excessive oil consumption; and (2) whether BMW had an affirmative duty to correct its false statement that the vehicle's oil consumption was normal. [Filing No. 156 at 5-6.]

BMW responds that neither Mr. Veren's nor Mr. Bolat's testimony provides a proper basis for reconsideration of the Summary Judgment Order. [Filing No. 159 at 3.] First, BMW asserts that the evidence is not newly discovered because Mr. Carroll did not exercise due diligence during the discovery period and did not ask any of the individuals deposed in this case what date or year BMW became aware of the alleged valve stem seal issue. [Filing No. 159 at 4.] Next, BMW argues that the testimony is not outcome determinative because it is "too vague and too ambiguous to establish anything with regard to the timeline of [BMW's] knowledge." [Filing No. 159 at 5-7.] BMW further argues that Mr. Veren's and Mr. Bolat's testimony does not contradict the evidence submitted at summary judgment showing that BMW did not know of the alleged valve stem seal issue when Mr. Carroll purportedly contacted DeFouw. [Filing No. 159 at 7-10.] In addition, BMW contends that the testimony does not implicate any duty to correct a false statement because the Court has already addressed this issue and concluded that no fiduciary relationship existed between Mr. Carroll and BMW. [Filing No. 159 at 10-11.] Finally, BMW argues that even if the Court accepts Mr. Carroll's interpretation of Mr. Veren's

6

and Mr. Bolat's testimony, it remains undisputed that Mr. Carroll was not diligent in pursuing his claims and therefore cannot rely on the fraudulent concealment doctrine. [Filing No. 159 at 11-13.]

In reply, Mr. Carroll maintains that Mr. Veren's and Mr. Bolat's testimony constitutes newly discovered evidence that "establishes that when [Mr. Carroll] first complained in 2012 to BMW via the DeFouw Service Manager that his car was low on engine oil and needed more oil in between BMW's recommended oil change intervals, BMW *did* know that defective valve stem seals were a potential cause of [Mr. Carroll's] vehicle's excessive oil consumption[.]" [Filing No. 162 at 2 (emphasis original) (internal citations omitted).] Mr. Carroll argues that he was diligent in discovering the new testimony because: (1) he sought information about the timing and scope of BMW's knowledge that defective valve stem seals cause oil consumption from BMW's corporate designee, Michael Murray, who provided testimony that "turned out to be totally off the mark based on what Mr. Veren and Mr. Bolat said"; (2) he filed the new evidence in this Court as soon as he became aware of it; and (3) BMW did not disclose Mr. Veren or Mr. Bolat as individuals likely to have discoverable information, "even though they unquestionably had discoverable information." [Filing No. 162 at 3-4.] Mr. Carroll asserts that the new testimony creates an issue of fact as to when BMW and its dealers first learned that defective valve stem seals potentially cause excessive oil consumption, and therefore the Court should reconsider its decision to grant summary judgment in BMW's favor. [Filing No. 162 at 2-3.] Mr. Carroll also reiterates that BMW had a duty to correct its prior misrepresentation that his vehicle's oil consumption was normal. [Filing No. 162 at 5.]

In his deposition in *Bryant*, Mr. Veren provided the following testimony:[1]

Q: And then at some point, like in 2013, I think the time is, BMW determined -- or maybe 2012 -- that the issue that was -- one of the issues that was causing excessive oil consumption were these valve stem seals. Right?

A: That's correct. Yes.

\*\*\*

Q: And so what BMW determined in 2012 or 2013 is that these valve stem seals were becoming hard and were letting oil come through into the combustion chamber. Right?

A: Exactly. You're spot on.

\*\*\*

Q: All right. So am I correct in the time frame that -- you know, roughly 2012 or '13, that it was determined that the valve stem seals were going bad on these N63-engine cars?

A: I think you're accurate in saying that. I'd have to look back at the SIB [service information bulletin], because the SIB was amended, but it kept the same -- the SIB number doesn't change. And I believe it was dated '13 or -- '12 or '13, so I would say you're accurate, but I would have to lock [sic] back . . . .[2]

Mr. Veren testified that he was not involved in the process of diagnosing the valve stem seal issue, but it "was something that was discussed within BMW." [Filing No. 159-2 at 10.] He

---

[1] Counsel for both parties are reminded that the Court's Practices and Procedures provide that a party relying on excerpted deposition testimony to support or oppose a motion should provide the relevant excerpts "and the three pages immediately preceding and following each excerpt." [Filing No. 5 at 2 (emphasis removed).] Neither party followed this rule, and although the Court does not believe that either party was being intentionally evasive, both parties' excerpts leave the Court wondering if a full and accurate picture of the relevant testimony was provided. [*See* Filing No. 156-2 at 3 (Mr. Carroll's excerpt of Mr. Bolat's testimony, ending with a question about whether BMW discovered the valve stem seal issue in early 2012 or late 2012 but not including Mr. Bolat's answer to the question); Filing No. 159-2 (BMW's excerpt of Mr. Veren's testimony, ending in the middle of Mr. Veren's answer to a question asking him to clarify the timeframe in which it was determined that valve stem seals were "going bad").] In this Order, the Court will primarily cite to the excerpts provided by BMW because those excerpts are longer and contain additional material not contained in Mr. Carroll's excerpts.

[2] As noted above, the deposition excerpt ends here, in the middle of Mr. Veren's answer. [Filing No. 159-2 at 11.]

8

indicated that "as early as 2012, 2013, . . . BMW engineering in Germany was aware that people were coming in with complaints of oil consumption" relating to prematurely aged valve stem seals. [Filing No. 156-1 at 6.]

In his deposition in *Hurley*, Mr. Bolat testified that he began working for BMW in 2014, although he worked at a BMW authorized dealer prior to that. [Filing No. 160-3 at 4.] Examining counsel represented to Mr. Bolat that Mr. Veren had testified that BMW became aware of valve stem seal issues "beginning in 2012." [Filing No. 160-3 at 5.] Mr. Bolat stated that, in 2012, he "hadn't seen [valve stem seal] problems yet at the dealership because the cars were still relatively new." [Filing No. 160-3 at 5.] Mr. Bolat further testified as follows:

> Q: So it's fair to say it's a common, valve stem seals going bad on N63 cars is a common problem; correct?
>
> A: It's one of the areas that they can leak, sure.
>
> Q: It's a common issue; right?
>
> A: We do a fair amount of them, sure.
>
> Q: Okay. And it's fair to say that the problem was first identified in 2012; correct?
>
> A: I believe so, yes. Like I said, I wasn't in those internal conversations so I don't know. Mr. Vereen [sic] I'm sure was, I don't know, but I would imagine, yes.
>
> Q: Okay. To the best of your understanding --
>
> A: To the best -- yeah, yeah.
>
> Q: -- 2012, early or late 2012?
>
> A: I'm not sure, to be honest. I couldn't answer that to be totally, you know -- I'm not sure when it was in 2012.

[Filing No. 160-3 at 5.]

Neither Mr. Veren's nor Mr. Bolat's testimony justifies reconsideration of the Summary Judgment Order. Without considering whether the testimony constitutes "new" evidence that

9

could not have been discovered sooner, the Court can readily reject Mr. Carroll's contention that the testimony establishes that BMW became aware that worn valve stem seals were a potential cause of excessive oil consumption prior to the time when Mr. Carroll spoke to the DeFouw Service Manager regarding adding oil to the Vehicle.

    Mr. Carroll never established when he spoke to the DeFouw Service Manager. When viewed in the light most favorable to him, the evidence suggests that the call was made sometime after his first oil change, in the winter or spring of 2012. [Filing No. 151 at 5 (citing Filing No. 102-1 at 28-29 (Mr. Carroll testifying in his deposition that the call occurred sometime between June 8, 2011 and July 25, 2012, either in "the winter or the spring" of 2012)).] Similarly, Mr. Veren did not specify when BMW became aware that worn valve stem seals were a potential cause of excessive oil consumption in N63 engines. Instead, he narrowed the timeframe to a two-year period, repeatedly affirming that it was either 2012 or 2013. Then, when counsel represented to Mr. Bolat—arguably incorrectly—that Mr. Veren had said that BMW became aware of the problem in 2012, Mr. Bolat simply deferred to Mr. Veren, because Mr. Bolat himself did not know when BMW first learned of the issue. Because Mr. Veren's and Mr. Bolat's testimony is vague and does not establish that BMW had knowledge of the potential valve stem seal issue prior to the time when Mr. Carroll called the DeFouw Service Manager, the testimony does not undermine the Court's previous conclusion that there is no evidence to suggest that BMW, through the DeFouw Service Manager, fraudulently concealed the issue from Mr. Carroll. The testimony also does not undermine the conclusion that nothing in BMW's internal documents demonstrates active concealment of the valve stem seal problem, as that problem was merely one of many potential causes of excess oil consumption. Furthermore, any argument that BMW had a duty to disclose the issue to Mr. Carroll has already been presented to

10

and rejected by the Court. Accordingly, Mr. Carroll's Motion for Reconsideration is **DENIED** to the extent it seeks reconsideration based on newly discovered evidence.

### B. Due Diligence

Mr. Carroll argues that the Court erred in concluding that he did not exercise due diligence for purposes of the fraudulent concealment doctrine. [Filing No. 156 at 6-8.] He contends that due diligence is a fact question that the jury should decide, and "now that BMW has admitted to knowing that the valve stem seals were defective in 2012, a jury can find that [Mr. Carroll] was more than reasonably diligent when he was actively and openly misled" by the DeFouw Service Manager. [Filing No. 156 at 7.]

BMW responds that Mr. Carroll merely attempts to reiterate the same diligence argument that was already considered and rejected, and that is not a proper basis for reconsideration. [Filing No. 159 at 11.] BMW also argues that the Court was correct in its previous conclusion that the undisputed facts demonstrate that Mr. Carroll was not diligent. [Filing No. 159 at 11-13.]

In reply, Mr. Carroll reiterates that diligence is ordinarily a fact for the jury to decide and that the newly discovered evidence would permit a jury to find in his favor on that issue. [Filing No. 162 at 6.]

"[T]he application of the fraudulent concealment doctrine is a question of equity, but it may depend upon questions of fact, which are properly answered by the fact-finder." *Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 262 (Ind. 2014). Here, however, Mr. Carroll has not presented any evidence from which a reasonable factfinder could conclude that he was diligent. It is undisputed that Mr. Carroll never mentioned any potential oil consumption issue after he first inquired about the oil indicator light during a phone call with the DeFouw Service

11

Manager. Mr. Carroll argues that BMW has "admitted" that it knew about the potential valve stem seal issue in 2012, and that this "admission" somehow changes the diligence analysis. However, as discussed above, BMW made no such admission, and therefore there is no basis for the Court to reconsider its previous conclusion. Apart from reiterating the same arguments he already made about diligence, Mr. Carroll has identified no manifest error in the Court's Summary Judgment Order. Accordingly, his Motion for Reconsideration is **DENIED** to the extent it seeks reconsideration of the Court's previous conclusion regarding Mr. Carroll's diligence.

### C. Mr. Manzari's Opinion

Mr. Carroll argues that the Court erred in excluding Mr. Manzari's opinion that BMW engaged in fraudulent concealment. [Filing No. 156 at 8-9.] Specifically, he asserts that Mr. Manzari's opinion would assist the jury in reaching a conclusion on the issue of fraudulent concealment, and a dispute of fact exists as to that issue in light of Mr. Veren's and Mr. Bolat's testimony. [Filing No. 156 at 9.]

BMW responds that Mr. Manzari's opinion was properly excluded because, as the Court determined, his expertise in automobile mechanics does not qualify him to give an expert opinion regarding what BMW knew and when. [Filing No. 159 at 13-14.] According to BMW, nothing in Mr. Carroll's motion would permit the Court to reconsider its conclusion on this issue. [Filing No. 159 at 14.]

In reply, Mr. Carroll reiterates the same arguments raised in his initial brief. [Filing No. 162 at 7.]

Mr. Carroll has not identified any basis upon which the Court must reconsider its previous decision to exclude Mr. Manzari's opinion concerning fraudulent concealment. Instead,

he merely reiterates the arguments he already presented to the Court in his briefing on BMW's motion to exclude Mr. Manzari's opinion. [*See* Filing No. 132.] This is not a proper basis for reconsideration. *See Vesely*, 762 F.3d at 666. Accordingly, Mr. Carroll's Motion for Reconsideration is **DENIED** to the extent that it seeks reconsideration of the Court's exclusion of Mr. Manzari's opinion.

### D. The *Hurley* Decision

Mr. Carroll submitted a Notice of Supplemental Authority, alerting the Court to a recent decision in *Hurley*. The *Hurley* court, in relevant part and relying on BMW's internal documents, concluded that "by February 2013, [BMW] knew the cause of [excessive oil consumption] was defective stem seals" and intentionally concealed the defect to avoid costly repairs. [Filing No. 165-1 at 4]; *Hurley*, 2021 WL 5822991, at *2. Applying Pennsylvania law, the court then concluded that a jury could find that the plaintiffs' claims were brought within the statute of limitations because BMW's failure to disclose the valve stem seal problem tolled the statute of limitations until each plaintiff discovered the defect in his or her vehicle. [Filing No. 165-1 at 6-7]; *Hurley*, 2021 WL 5822991, at *3.

*Hurley* does not warrant reconsideration of the Summary Judgment Order. The fact that the plaintiffs in *Hurley* produced evidence that BMW intentionally concealed the valve stem seal problem does nothing to cure the lack of evidence in this case. It also does not bear on the issue of Mr. Carroll's diligence, which is an important component of Indiana's fraudulent concealment doctrine but does not appear to have been a consideration in the *Hurley* court's discussion of fraudulent concealment under Pennsylvania law.

## IV.
### CONCLUSION

As the Seventh Circuit has made clear, "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Diadenko v. Folino*, 741 F.3d 751, 757-58 (7th Cir. 2013) (quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)).  Mr. Carroll failed to meet his burden at summary judgment, and for the reasons discussed above, has not identified any basis for the Court to reconsider its previous decision.  Mr. Carroll's Motion for Reconsideration, [156], is **DENIED**.

Date: 12/16/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**